UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| CHRISTOPHER ARMES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 07 C 5766 |
| ) | |
| SHANTA ENTERPRISE, INC. ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION AND ORDER

FREDERICK J. KAPALA, District Judge:

On February 18, 2008, plaintiff, Christopher Armes, filed a first-amended complaint against defendant, Shanta Enterprises, Inc., alleging that defendant violated § 1681c(g) of the Fair and Accurate Credit Transactions Act ("FACTA"), an amendment to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, when it issued plaintiff a receipt that contained his entire credit card number and the expiration date of his credit card. Pursuant to § 1681n of the FCRA, plaintiff seeks statutory damages, attorney's fees, litigation expenses and costs, and an injunction enjoining defendant from further violating § 1681c(g).

Plaintiff moves to certify the following class:

All persons to whom Defendant provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring after December 4, 2006, which receipt displayed more than the last five digits of the person's credit and/or debit card number.

-1-

## I. BACKGROUND

Plaintiff alleges that on or about June 21, 2007, he rented a room at defendant's Super 8 Motel using his Visa card after which defendant issued him a receipt listing his entire Visa credit card account number and the expiration date for that card. Plaintiff admits that he was not the victim of identity theft as a result of defendant's practices and does not allege any harm as a result.

Section 1681c(g) of the FCRA provides:

> Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

15 U.S.C. § 1681c(g)(1). Section 1681n(a) provides that,

> Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of . . . any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000.

15 U.S.C. § 1681n(a)(1)(A).

## II. DISCUSSION

District courts have broad discretion to determine whether certification of a class is appropriate under Federal Rule of Civil Procedure 23. Chavez v. Ill. State Police, 251 F.3d 612, 629 (7th Cir. 2001). To complete such a Rule 23 analysis, this court is required to delve beyond the plaintiff's allegations and conclusory remarks and assess whether the evidence merits class certification. Szabo v. Bridgeport Machs., Inc., 249 F.3d 672, 675-76 (7th Cir. 2001). Plaintiff bears the burden of proving that the class should be certified. Oshana v. Coca-Cola Co., 472 F.3d 506, 513 (7th Cir. 2006).

To obtain class certification, a plaintiff must satisfy all four requirements of Federal Rule of Civil Procedure 23(a): (1) "the class is so numerous that joinder of all members is impracticable" (numerosity); (2) "there are questions of law or fact common to the class" (commonality); (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class" (typicality); and (4) "the representative parties will fairly and adequately protect the interests of the class" (adequacy of representation). Fed. R. Civ. P. 23(a); Oshana, 472 F.3d at 513. Even if a plaintiff meets all of the Rule 23(a) requirements, he or she also must satisfy one of the requirements set forth in Rule 23(b). Fed. R. Civ. P. 23(b). In this case, plaintiff seeks certification pursuant to Rule 23(b)(3), which requires the court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Several judges in the Northern District of Illinois have certified classes similar to the one plaintiff proposes here. See Beringer v. Standard Parking Corp., Nos. 07 C 5027, 07 C 5119, 2008 WL 4390626 (N.D. Ill. Sept. 24, 2008); Cicilline v. Jewel Food Stores, Inc., 542 F. Supp. 2d 831 (N.D. Ill. 2008); Harris v. Best Buy Co., Inc., 254 F.R.D. 82 (N.D. Ill. 2008); Redmond v. Uncle Julio's of Ill., Inc., 249 F.R.D. 290 (N.D. Ill. 2008); Matthews v. United Retail, Inc., 248 F.R.D. 210 (N.D. Ill. 2008); Meehan v. Buffalo Wild Wings, Inc., 249 F.R.D. 284 (N.D. Ill. 2008); Harris v. Circuit City Stores, Inc., No. 07 C 2512, 2008 WL 400862 (N.D. Ill. Feb. 7, 2008); Troy v. Red Lantern Inn, Inc., No. 07 C 2418, 2007 WL 4293014 (N.D. Ill. Dec. 4, 2007); Halperin v. Interpark, Inc., No. 07 C 2161, 2007 WL 4219419 (N.D. Ill. Nov. 29, 2007). However, defendant encourages this court to follow the reasoning of district courts in the Fourth, Ninth, and Eleventh Circuits, which

have denied class certification to plaintiffs unharmed by a defendant's violation of § 1681c(g)(1). Specifically, defendant argues that (1) plaintiff is not an adequate representative of the class because he is a "professional plaintiff" involved in several FACTA cases; (2) individual issues predominate the litigation; and (3) a class action is not a superior method for adjudicating these claims.

A. Rule 23(a) Factors

1. Numerosity, Commonality, and Typicality

Although defendant does not dispute that plaintiff has satisfied the elements of numerosity, commonality and typicality, before deciding whether to allow a case to proceed as a class action, the court is required to make an independent assessment of the factual and legal inquiries necessary under Rule 23. Szabo, 249 F.3d at 676.

Although there is no "magic number" for numerosity purposes, joinder is considered impractical when a class numbers at least forty members. See Swanson v. Am. Consumer Indus., 415 F.2d 1326, 1333 n.9 (7th Cir.1969); Steinbrecher v. Oswego Police Officer Dickey, 138 F. Supp. 2d 1103, 1106 (N.D. Ill. 2001). Here, defendant admits that the number of receipts it printed since December 4, 2006, and prior to its compliance with § 1681c(g)(1), is 5,330, and that it issued more than 100 sales receipts during this time that included full credit card numbers. As a result, plaintiff has met the numerosity requirement.

The factors of commonality and typicality are also satisfied. "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." Keele v. Wexler, 149 F.3d 589, 594 (7th Cir. 1998) (quotation marks omitted). A common set of operative facts is ordinarily present when the defendants are claimed to have engaged in "standardized conduct towards members of the proposed class." Id. In this case, the printing of credit card receipts

containing complete credit card information is the same general practice that affected all members of the class.

"A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." Id. (quotation marks omitted). Plaintiff's claim is also typical because it presents factual and legal issues that are common to all class members, such as whether defendant routinely provided receipts that contained customers' complete credit or debit card numbers and expiration dates, and whether that conduct was a willful violation of the FACTA. Accordingly, plaintiff has met the commonality and typicality criteria.

2. Adequacy

In determining adequacy of class representation, the court considers (1) whether the named plaintiffs' counsel will adequately protect the interests of the class, and (2) whether any conflicts of interest exist between the named plaintiffs and the class members. Harper v. Sheriff of Cook County, No. 07 CV 2393, 2008 WL 4686148, at *3 (N.D. Ill. May 29, 2008); see also Retired Chi. Police Ass'n v. City of Chi., 7 F.3d 584, 598 (7th Cir. 1993).

a) Counsel

Class counsel is adequate if they are "experienced, competent, qualified and able to conduct the litigation vigorously." Redmond, 249 F.R.D. at 295. Defendant does not dispute that plaintiff's counsel can adequately protect the interests of the class. Plaintiff's counsel has submitted a list of several cases in which they litigated class claims, and have assured the court that they have done significant research of the FCRA prior to filing plaintiff's complaint. Thus, this court finds that counsel is adequate.

### b) Plaintiff

"A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625-26 (1997) (alteration and quotation marks omitted). "To be an adequate representative, a plaintiff must have a sufficient stake in the outcome to ensure zealous advocacy, and must not have antagonistic or conflicting claims with other class members." Rahim v. Sheahan, No. 99 C 0395, 2001 WL 1263493, at *15 (N.D. Ill. Oct. 19, 2001) (citing Retired Chi. Police Ass'n, 7 F.3d at 598).

Defendant argues that plaintiff is not an adequate class representative because (1) he has had a previous relationship with his attorney which may cause him to help maximize the monetary return to his attorney rather than zealously advocate on behalf of the class; (2) he is a plaintiff in six other FACTA cases; and (3) he has little knowledge of the case and does not understand the cost of notice.

### 1) Previous Relationship with Attorney

Although the Seventh Circuit has not adopted a per se rule regarding the propriety of a class representative's previous relationship with an attorney representing a class, it is within the district court's discretion to find a class representative inadequate where there is a "possibility that one so situated will become more interested in maximizing the 'return' to his counsel than in aggressively presenting the proposed class' action." Susman v. Lincoln Am. Corp., 561 F.2d 86, 93-95 (7th Cir. 1977). Such a conflict of interest must be determined from the facts of each case, and considering other factors that provide adequate protection for absent class members. Id. at 95-96. In this case, plaintiff's relationship with class counsel is not one that creates such a conflict.

Plaintiff's past relationship with counsel appears to be limited to representation in other matters.[1] Unlike the relationships in cases cited by defendant, there is no evidence that plaintiff has a familial or business relationship with his counsel outside of their attorney-client relationship. Compare Susman, 561 F.2d at 95 (finding that where class counsel were plaintiff's brother and an attorney from a neighboring firm, plaintiff was not a proper class representative); London v. Wal-Mart Stores, Inc, 340 F.3d 1246, 1249-50, 1253 (11th Cir. 2003) (finding plaintiff an improper class representative where he and his attorney had been close friends since high school, and had a previous business relationship); Mowry v. JP Morgan Chase Bank, N.A., No. 06 C 4312, 2007 WL 1772142, at *3-4 (N.D. Ill. June 19, 2007) (denying class certification where one plaintiff's brother was an attorney at one of the law firms that would be class counsel, and the other plaintiff was a close friend and former roommate of the same attorney); Simon v. Ashworth, Inc., No. CV071324GHKAJWX, 2007 WL 4811932, at *4 (C.D. Cal. Sept. 28, 2007) (noting that plaintiff's family had a close relationship with counsel, that plaintiff's father worked for counsel's law firm, and that plaintiff previously worked at the law firm). Nor is there any indication that plaintiff's previous representation by his counsel would cause him to be more interested in maximizing the return to his counsel than aggressively representing the proposed class or incline him to support his attorney's interests over those of the other class members. Compare Susman, 561 F.2d at 95. Accordingly, the court rejects this argument.

---

[1] According to plaintiff, he contacted his counsel several years ago for assistance in a legal dispute he was having with a car dealership, and plaintiff later sought his attorneys' services in cases such as this. In his deposition, plaintiff admits that Mr. Raphael and Mr. Markoff represented him in previous cases involving alleged violations of the FACTA. Beyond these references, nothing in the record reflects that plaintiff and his counsel had any other type of relationship.

2) Professional Plaintiff

As to defendant's second argument, the Seventh Circuit has found that there is nothing overtly pejorative about a "professional plaintiff" in a class action lawsuit. Murray v. GMAC Mortgage Corp., 434 F.3d 948, 954 (7th Cir. 2006). The Murray court reasoned that nothing about the frequency of a plaintiff's litigation implies that he or she "is less suited to represent others than is a person who received and sued on but a single offer." Id. In fact, "[r]epeat litigants may be better able to monitor the conduct of counsel, who as a practical matter are the class's real champions." Id. As such, the fact that plaintiff is involved in multiple lawsuits is not enough to make him inadequate to serve the class.

Defendant argues that plaintiff differs from the plaintiff in Murray because he has taken a more active role in pursuing litigation than the plaintiff in Murray. However, defendant's argument is unpersuasive. In Murray, the Seventh Circuit remarked that although a person who seeks out opportunities to sue could do so in ways that injure other class members, the plaintiff there did not do so because she just opened the mail as it arrived and did not invite any of the offers or entrap any potential creditor into accessing her credit history. Id. The same is true in this case. Although defendant implies plaintiff may have traveled to Illinois and Wisconsin to obtain receipts in violation of the statute, there is no evidence that this was the purpose for plaintiff's travels. Moreover, neither party suggests that plaintiff enticed defendant to print plaintiff's entire credit card number or visited the hotel intentionally to receive the receipt at issue. Thus, the court does not agree that the fact that defendant has been involved in multiple FACTA cases makes him unsuitable to represent the class.

### 3) Knowledge of the Suit

Defendant's third argument, that plaintiff is inadequate because he has little knowledge of the suit, is curious in light of his second argument that plaintiff is a frequent plaintiff in these types of suits. The Seventh Circuit has noted that a plaintiff's involvement in multiple cases "implies experience, if not expertise." Id. In any event, "[t]o be adequate, the class representative must maintain only an understanding of the basic facts underlying the claims, some general knowledge, and a willingness and ability to participate in discovery." Quiroz v. Revenue Prod. Mgmt, Inc., 252 F.R.D. 438, 442 (N.D. Ill. 2008) (quotation marks omitted); Wahl v. Midland Credit Mgmt., Inc., 243 F.R.D. 291, 298 (N.D. Ill. 2007). The burden to establish this standard is not difficult. Wahl, 243 F.R.D. at 298.

In his deposition, plaintiff acknowledged that his duty was to represent the class and that he had financial responsibilities, including bearing the cost of notice. Plaintiff also noted that he had reviewed the amended complaint before it was filed. Although plaintiff admitted that he did not know that exact number of class members or the cost of notice, the record does not reflect that plaintiff lacks a basic understanding of the claims, general knowledge of the suit, or a willingness to participate in discovery. Compare Quiroz, 252 F.R.D. at 443.

There appears to be no conflict or antagonism between plaintiff's interest and that of the other class members. In his deposition, plaintiff stated that he sought to get what was fair for the class. Moreover, plaintiff has a sufficient interest in the cause to ensure vigorous advocacy, as his claim mirrors those of the class and he potentially stands to recover damages. Accordingly, this court finds that plaintiff has met the adequacy requirements of Rule 23(a).

B. Rule 23(b) Factors

Rule 23(b)(3) requires that questions of law or fact common to the members of the class predominate over questions affecting only individual members, and that a class action is superior to other methods of adjudicating the class claims. Fed. R. Civ. P. 23(b)(3). Defendant argues that plaintiff has failed to satisfy either prong of the Rule 23(b)(3) test.

1. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem, 521 U.S. at 623. "In order to satisfy the requirement of predominance, the plaintiff must show that common issues not only exist but outweigh the individual questions," and that the common questions are central to all claims. Dhamer v. Bristol-Myers Squibb Co., 183 F.R.D. 520, 529 (N.D. Ill. 1998). Usually, when a class challenges a uniform policy or practice, the validity of that policy or practice tends to be the predominant issue. Blihovde v. St. Croix County, Wis., 219 F.R.D. 607, 620 (W.D. Wis. 2003).

Here, the class' plaintiffs challenge a uniform practice of defendant. Their claims also share a common question of law: whether defendant's providing an electronically printed receipt displaying more than the last five digits of the person's credit and/or debit card number is in violation of § 1681c(g). Because there are no other legal questions at issue, whether defendant violated § 1681c(g) predominates this lawsuit. Compare Redmond, 249 F.R.D. at 296; Harris, 254 F.R.D. at 89. Thus, it is unlikely that individual questions of law and fact will predominate over the common questions of the class.

Defendant argues that individual issues are likely to predominate in this case because the individual members of the punitive class could be entitled to differing amounts of damages within

the $100 to $1,000 range of statutory damages provided by § 1681n(a)(1)(A). Defendant also argues that the class may include members who seek to recover actual damages which are more than the statutory damages allowed. The court is unpersuaded by defendant's arguments.

First, defendant offers no reason why the statutory award to each plaintiff who experienced a uniform practice of defendant in a similar, if not identical, situation would differ.[2] "The conduct at issue here-namely, the creation of a computer-generated receipt-is completely standardized." Beringer, 2008 WL 4390626, at *4. Moreover, although there may be potential plaintiffs who actually have been harmed by the alleged violation of FACTA, these issues do not predominate, and these plaintiffs may choose to opt out of the class. See Redmond, 249 F.R.D. at 296; see also Murray, 434 F.3d at 953 ("When a few class members' injuries prove to be substantial, they may opt out and litigate independently."). In fact, the parties do not point to any instance where a potential class member suffered actual harm from the alleged FACTA violation. Id.

In any event, even if class members are entitled to differing amounts of damages, it is not uncommon for Rule 23(b)(3) class actions to involve differing damage awards for different class members.[3] De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 233 (7th Cir. 1983); see also

---

[2]But see Stillmoch v. Weis Markets, Inc., No. MJG-07-1342, 2009 WL 595642, at *4 (D. Md. Mar. 5, 2009) (finding that a jury could properly consider the number of times that a class member was issued a non-compliant receipt in determining a discretionary amount between $100 and $1000.)

[3]This differs considerably from the situation in Aiello v. Providian Financial Corp., 239 F.3d 876, 881 (7th Cir. 2001), a case relied upon by defendant. That case involved a statute which allowed for the recovery of actual damages suffered as a result of a willful violation of certain provisions of the Bankruptcy Code. See 11 U.S.C. § 362(k)(1). There, the Seventh Circuit dealt with "the existence, gravity, and monetary value of the emotional distress" suffered. Aiello, 239 F.3d at 881. As such, the court concluded that the case was not suitable for class action treatment because of the considerable variance in emotional injury that could be present amongst the members of the class. This case is distinguishable in that plaintiff seeks statutory, not actual damages, and

Carnegie v. Household Int'l, Inc., 376 F.3d 656, 661 (7th Cir. 2004). In fact, "[i]n any class action for damages, no two parties will ever have exactly the same claim." Spoerle v. Kraft Foods Global, Inc., 253 F.R.D. 434, 439 (W.D. Wis. 2008); see also Blihovde, 219 F.R.D. at 621 (holding that "the cases are legion in which courts have rejected arguments that differences in damages among the class members should preclude class certification"). "[T]he presence of individual questions at the damages stage generally does not defeat certification of the class for a determination of liability." Beringer, 2008 WL 4390626, at *4. As such, the court finds that plaintiff has met the predominance requirement of Rule 23(b). See Harris, 254 F.R.D. at 89; Redmond, 249 F.R.D. at 296.

### 2. Superiority

"A class action is superior where potential damages may be too insignificant to provide class members with incentive to pursue a claim individually." Wahl, 243 F.R.D. at 301 (quotation marks omitted). In Murray, the Seventh Circuit noted that Rule 23(b)(3) was designed for class claims like those made under the FCRA because individual losses, if any, are likely to be small, and there is only a modest concern about privacy due to a slight chance that information would leak out and lead to identity theft. 434 F.3d at 953. As such, "the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." Id.

Despite this reasoning, defendant argues that a class action is not the superior method to adjudicate this case because the potential financial exposure of the case could be ruinous to defendant, and plaintiff admits he has suffered no injury. However, this argument was expressly rejected by the Seventh Circuit in Murray. In that case, the court held that:

---

thus, the standardized conduct of defendant is more significant than the various effects on the plaintiffs.

The reason that damages can be substantial, however, does not lie in an "abuse" of Rule 23; it lies in the legislative decision to authorize awards as high as $1,000 per person, combined with GMACM's decision to obtain the credit scores of more than a million persons.

Many laws that authorize statutory damages also limit the aggregate award to any class. For example, the Fair Debt Collection Practices Act says that total recovery may not exceed "the lesser of $500,000 or 1 per centum of the net worth of the debt collector". The Truth in Lending Act has an identical cap. Other laws, however, lack such upper bounds. The Fair Credit Reporting Act is in the cap-free group.

The district judge sought to curtail the aggregate damages for violations he deemed trivial. Yet it is not appropriate to use procedural devices to undermine laws of which a judge disapproves. Maybe suits such as this will lead Congress to amend the Fair Credit Reporting Act; maybe not. While a statute remains on the books, however, it must be enforced rather than subverted. An award that would be unconstitutionally excessive may be reduced, but constitutional limits are best applied after a class has been certified. Then a judge may evaluate the defendant's overall conduct and control its total exposure. Reducing recoveries by forcing everyone to litigate independently-so that constitutional bounds are not tested, because the statute cannot be enforced by more than a handful of victims-has little to recommend it.

Id. at 953-54 (citations omitted). Following this reasoning, several district courts in this circuit have rejected similar arguments made by defendants in FACTA cases. See Beringer, 2008 WL 4390626, at *5; Cicilline, 542 F. Supp. 2d at 839; Best Buy Co., 254 F.R.D. at 90; Redmond, 249 F.R.D. at 296; Matthews, 248 F.R.D. at 216; Meehan, 249 F.R.D. at 287-88; Circuit City Stores, 2008 WL 400862, at *9-10; Troy, 2007 WL 4293014, at *4; Halperin, 2007 WL 4219419, at *4.[4]

---

[4]Defendant's argument that "[a]t least one district court in the Seventh Circuit has also agreed that the circumstantial differences between 'firm offer' cases [like Murray] and 'credit card receipt' cases make [Murray] inapplicable in the latter cases" is somewhat disingenuous. In In re H & R Block Mortgage Corp., 244 F.R.D. 490 (N.D. Ind. 2007), the case cited by defendant, the district court was applying the law of the Ninth Circuit in multidistrict litigation. Id. at 494-95. While the court did distinguish FACTA cases in the Ninth Circuit from firm offer cases in that circuit, it did not apply this distinction as to Seventh Circuit law. In fact, earlier in its analysis that court noted that, "[T]he Seventh Circuit rejected this contention that the class should not be certified because the defendant could face huge financial losses even though the class members suffered little or no actual harm . . . ." Id. at 495.

Despite this precedent, defendant argues Murray is distinguishable and encourages this court to rely on district court cases from other circuits. Specifically, defendant argues that, unlike the circumstances in Murray, plaintiff here was not harmed, and defendant's liability resulted from a mere technical violation rather than a conscious decision. Moreover, defendant points out that since Murray, the Supreme Court has clarified that reckless conduct is sufficient to meet the "willful" requirement of § 1681n(a)(1)(A). Defendant also notes that the violations in Murray occurred under another subsection of the FCRA.

However, the court does not find these arguments persuasive. The Seventh Circuit's reasoning in Murray did not hinge upon the degree of harm to the plaintiff or the degree of the defendant's culpability. Rather, the Murray court's reasoning is based upon the premise that the legislature, not the court, decides the magnitude of possible penalties a defendant could face for breaching a statute. Section 1681n(a)(1)(A) does not make distinctions between the level of harm a customer may have suffered, and in fact, allows a customer to recover even if he or she has not been harmed. As such, this court will not accept defendant's invitation to stray from the precedent of this Circuit.

The court also rejects defendant's arguments that the court's reduction of the ultimate award after class certification is not the superior method of adjudication, and that class certification here would force defendant to enter a "blackmail settlement" in this case. The Seventh Circuit has clearly held that considerations of due process and disproportionality of damage awards resulting from awards pursuant to § 1681n(a)(1)(A) should be applied after a class has been certified. Murray, 434 F.3d at 954. Moreover, although the Seventh Circuit recognized in In re Rhone-Poulenc Rorer Inc., 51 F.3d 1293, 1298 (7th Cir. 1995), that "blackmail settlements" can arise in situations where there

is "a small probability of an immense judgment in a class action," defendant's reliance on Rhone-Poulenc is misplaced. In that case, the Seventh Circuit was dealing with a situation where (1) evidence of individual test cases showed that the plaintiffs' claims lacked legal merit; and (2) individual suits were not infeasible because a single claim of each class member was not tiny relative to the expense of litigation, but rather could garner millions of dollars. Id. at 1299-1300. Here, by contrast, the evidence does not show a "great likelihood" that plaintiff's claims lack merit and there is no evidence that the damages claim of each potential class member would be large enough to sustain individual actions. Compare Cicilline, 542 F. Supp. 2d at 840. "Rather, for most potential class members, there are no actual damages and the recovery would be 'tiny relative to the expense of litigation' on an individual basis." Id. (quotation marks omitted).[5]

As such, in light of the Seventh Circuit's reasoning in Murray, the court cannot agree with defendant's argument that superiority is lacking due to a potential massive recovery by plaintiffs. The facts of this case demonstrate that a class action is the superior method of adjudicating this case because of the judicial economy realized from consolidation of separate claims, and because the damages for each class member are likely to be relatively small such that individually they would be without effective strength to bring a suit. See Amchem, 521 U.S. at 617 (holding that in regard to Rule 23(b)(3) "the Advisory Committee had dominantly in mind vindication of 'the rights of

---

[5]In addition, both Rhone-Poulenc and In re Bridgestone/Firestone, Inc, 288 F.3d 1012 (7th Cir. 2002), another case relied upon by defendant, are distinguishable because they involved nationwide tort litigation with claims involving actual damages. See Bridgestone, 288 F.3d at 1015-16; Rhone-Poulenc, 51 F.3d at 1298. This case is distinguishable in that it involves a federal statute whereby the legislature has dictated the magnitude of possible damages. See Murray, 434 F.3d at 953-54. Thus, FACTA class actions do not implicate the same unintended catastrophic results as those contemplated by the Bridgestone and Rhone-Poulenc courts.

groups of people who individually would be without effective strength to bring their opponents into court at all.'"). Accordingly, the criteria of Rule 23(b)(3) are satisfied.

III. CONCLUSION

For the foregoing reasons, plaintiff's second motion for class certification is granted.

ENTER:

_____
FREDERICK J. KAPALA
District Judge

Date: July 8, 2009